85 F.3d 631
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Carl CUSUMANO and Diane Cusumano, Plaintiffs, Cross-Appellees,
v.
MAPCO GAS PRODUCTS, INCORPORATED, Defendant-Third Party
Plaintiff-Appellee, Cross-Appellant,
v.
ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Third Party
Defendant-Appellant. Cross-Appellee.
 Nos. 95-2031, 95-2119.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 8, 1995.
Decided April 29, 1996.
 
 Before WOOD, Jr., FLAUM and MANION, Circuit Judges.
 
 ORDER
 
 1
 Carl Cusumano sued Mapco Gas for serious injuries he incurred from a liquified natural gas explosion. Mapco brought in the Illinois State Highway Authority as a third party defendant. The jury awarded damages, designating fault among Mapco (50%), the Highway Authority (20%), and Cusumano (30%). On appeal the defendants contest who should pay and how much. We reverse summary judgment in favor of Mapco for breach of contract, affirm on the denial of remittitur and remand.
 
 I.
 A. The Bid
 
 2
 In June of 1990, the Illinois State Toll Highway Authority ("Authority") solicited bids for a two-year contract to supply liquid propane ("LP") to certain of its toll plazas which employ LP-powered electric generators as a back-up power supply. To solicit bids, the Authority mailed invitation-to-bid packages to LP gas suppliers, including Mapco Gas Products, Inc. ("Mapco"). Each package consisted of: an Invitation to Bid, Standard Special Provisions, Additional Special Provisions, Specifications, Bid Form, Bid Envelope, Bidder's List and Questionnaire, and the Authority's Purchasing Practices and Procedures and General Provisions.
 
 
 3
 On June 25, 1990, Mapco submitted to the Authority a fully prepared and executed Bid for Contract No. 90-47-4738. The bid was signed by James Grote, the district manager of Mapco's Chicago area district. One month later the Authority awarded Mapco the contract on this bid, and the same day mailed a letter so stating along with a Contract Purchase Order. Mapco received but misfiled the letter. Mapco admits that the acceptance of its bid established a contractual relationship between it and the Authority beginning August 1, 1990, even though Mapco did not know that it had been awarded the contract.
 
 
 4
 John Canniff, the building maintenance manager for the Authority, also was unaware of the contractual relationship. Thus, when the toll plaza at Downer's Grove, Plaza 56A, ran low on propane, Canniff called Diane Fitzgerald in the Authority's Operations Department and asked which supplier had the new LP contract. After Fitzgerald told Canniff Mapco had the contract, Canniff phoned Mapco and spoke with Grote. Although they dispute many details of their conversation, they agree that Canniff informed Grote that Mapco had been awarded the contract and that Plaza 56A required an LP delivery. Because of the earlier misfiling of the award letter and Contract Purchase Order, this was the first that Grote was aware that Mapco had been awarded the bid. Grote agreed to have Mapco deliver LP gas to Plaza 56A the next morning, August 10, 1990.
 
 B. The Explosion
 
 5
 The following morning Mapco employee Michael Spangler arrived at Plaza 56A with a 460-gallon tank of liquid propane. Spangler and Authority mechanic Carl Cusumano installed the tank. Spangler replaced the existing tank with the new tank and Cusumano lit the vaporizer that converts propane from a liquid to a vapor. After Spangler had connected the new tank the two men went into the generator room to bleed the line running between the vaporizer and the generator. LP gas in the generator room exploded, seriously injuring Spangler and Cusumano.
 
 C. The Lawsuit
 
 6
 Toll Highway Authority mechanic Cusumano sued Mapco in tort. Counts I and II sought damages in negligence; counts III and IV sought damages in strict product liability; count V sought damages in strict liability for an abnormally dangerous activity; and count VI sought punitive damages for willful and wanton conduct. In response, Mapco filed a third-party complaint against the Authority based upon the Authority's alleged negligence, seeking to recover under a theory of implied indemnity in Count I and under the Illinois Contribution Act in Count II. Responding in turn, the Authority filed a cross-claim seeking a declaratory judgment against Mapco alleging that: (1) Mapco breached its contractual obligation to procure insurance naming the Authority as an additional insured; and (2) Mapco was contractually obligated to indemnify the Authority for losses resulting from Mapco's negligence. The Authority also filed a counterclaim against Mapco seeking costs, attorney's fees, and expenses incurred by the Authority in defending again Mapco's third party complaint. Count I based recovery on the contract's indemnity provision and Count II based recovery on breach of contract to install LP tanks in a safe manner.
 
 
 7
 The district court entered summary judgment for Mapco on the Authority's cross-claim for declaratory judgment. The court held that when the Authority requested that Mapco deliver LP gas without first ascertaining whether Mapco had complied with the contractual provision to procure insurance naming the Authority as an insured, the Authority had waived that provision.
 
 
 8
 Prior to a jury trial on the remaining counts, the court dismissed Count I of Mapco's third-party complaint for implied indemnity and entered summary judgment for Mapco on Cusumano's Count V strict liability claim. At the close of Cusumano's case, the district court entered a directed verdict for Mapco on Cusumano's Count VI claim for punitive damages.
 
 
 9
 The jury returned a verdict in favor of Mapco on Cusumano's remaining strict liability claims and in favor of Cusumano on his negligence claims. The jury determined that Cusumano suffered $2,000,000 in total damages; $200,000 of the award was for past and future lost wages and $100,000 for future medical expenses. The jury assessed the relative fault of the parties as: 50% Mapco; 20% Authority; and 30% Cusumano himself. Thus, Cusumano's award was reduced to $1,400,000 due to his comparative negligence, and his past and future lost wages and future medical expenses were reduced to $140,000 and $70,000, respectively. The jury also returned a verdict for the Authority on its counterclaim against Mapco for breach of contract. The jury did not determine the damages caused by the breach due to a pretrial stipulation between the Authority and Mapco removing damages on the counterclaim from jury consideration.
 
 
 10
 Following the jury's verdict, the Authority and Cusumano reached a settlement agreement in which the Authority waived its right to recover Illinois Workers Compensation Act payments it had made to Cusumano out of the judgment Cusumano had won against Mapco. In return Cusumano waived his right to recover any further compensation under the Act. The settlement capped the Authority's payment at the $202,119.46 the Authority had already paid to Cusumano along with $33,000 in attorney's fees.
 
 
 11
 Both the Authority and Mapco filed post-trial motions. Mapco sought a judgment of no liability as a matter of law on the Authority's breach of contract jury verdict, a motion for entry of judgment on Mapco's third party claim for contribution, and a remittitur of the damage award to Cusumano for future medical expenses and past and future lost wages. The Authority sought a dismissal of Mapco's third-party complaint for contribution based upon the Authority's settlement with Cusumano, entry of judgment on the Authority's breach of contract claim, and a modification to the court's earlier summary judgment for Mapco on the cross claim for breach of the insurance provision of the contract.
 
 
 12
 On March 28, 1995, the district court decided all remaining post-trial motions. The court granted Mapco's motion for entry of judgment of no liability on the jury verdict for the Authority's breach of contract claim. The court also dismissed Mapco's third-party complaint for contribution after finding that the Authority's settlement with Cusumano was entered into in good faith. The court denied the Authority's motion to modify summary judgment for Mapco on the Authority's cross-claim for breach of the insurance provision, and denied Mapco's motion for remittitur.
 
 
 13
 The Authority filed a notice of appeal which was followed by Mapco's notice of cross-appeal. The three parties raised, argued, and responded to a host of issues. However, with the exception of the district court's denial of Mapco's motion for a remittitur on damages, our decision reversing summary judgement for Mapco on the Authority's cross-claim seeking a declaratory judgment on the insurance provision issue renders all other issues moot. On the remittitur we affirm the district court.
 
 II.
 
 14
 A. Mapco's Contractual Obligation to Obtain Insurance
 
 
 15
 The district court granted summary judgment for Mapco and against the Authority on the Authority's cross-claim alleging that Mapco breached its contractual obligation to have the Authority named as an additional insured. The district court held that the Authority had waived this provision when Canniff requested that Mapco deliver LP to Toll Plaza 56A.
 
 
 16
 Before turning to whether the Authority waived this contract provision, we examine the contract terms in detail. First, Certification Clause No. 2 on the Bidders Certification Form provides:
 
 
 17
 The undersigned hereby certifies that he has read and understands the contents of this invitation.... That acceptance by the Illinois State Toll Highway Authority of this offer by issuance of a purchase order within 60 calendar days following the bid opening will constitute a binding contract. The bidder agrees to fully comply with the terms and conditions contained in this contract and with all terms and conditions as set forth in The Authority's Purchasing Practices and Procedures and General Provisions together with contract specifications.
 
 
 18
 This clause, indeed each of the "Certification" clauses on the Bidders Certification Form, was separately signed by Jim Grote, district manager for Mapco.
 
 
 19
 Two separate contract provisions deal with insurance coverage. The first is contained within a 30-page typeset booklet titled Purchasing Practices and Procedures and General Provisions, published by the Illinois Toll Highway Authority. By its own description, the booklet promulgates statutorily mandated rules and regulations "to govern all purchases of materials, equipment and services" by the Authority. Section 5.10 on pages 26-27 of the General Provisions, titled "Insurance," stipulates:
 
 
 20
 The contractor shall not commence work under this contract until he has obtained all the insurance required by the Authority as specified in the Bid Documents. The insurance shall provide....
 
 
 21
 There follows text requiring: (a) adequate workers compensation and occupational insurance for the contractor's employees as required by law and employer's liability insurance as specified in the invitation and instructions to bid, as well as the same insurance from all subcontractors retained by the contractor; (b) comprehensive general liability insurance for the contractor; and (c) comprehensive automobile liability insurance to protect the contractor. Section 5.10 concludes:
 
 
 22
 The above described insurance policies or certified copies thereof shall be delivered to the Authority prior to commencing work....
 
 
 23
 Another insurance provision is found in the Additional Special Provisions. This four page typed document explicitly attaches to "Contract No. 90-4738," the contract on which Mapco bid and was awarded. It addresses specific requirements for the furnishing and delivery of Liquid Propane Fuel. Additional Special Provision ASP-14, titled "Insurance," requires:
 
 
 24
 The successful bidder shall furnish proof of insurance coverage of the kind and in the amounts stated hereinafter. The Illinois State Toll Highway Authority shall be named as an additional insured for all Liability Coverages. Insurance protection shall be maintained during the length of this contract.
 
 
 25
 (a) Workers' Compensation and Occupational Insurance
 
 Statutory Limits
 
 26
 Employers' Liability: $500,000 per occurrence
 
 
 27
 * * *
 
 
 28
 * * *
 
 
 29
 (c) Comprehensive/Commercial General Liability Insurance
 
 
 30
 $1,000,000 Combined Single Limit per Occurrence
 
 
 31
 $2,000,000 General Annual Aggregate
 
 
 32
 While this provision, like Section 5.10, requires proof of insurance coverage, unlike Section 5.10 it does not require the contractor to furnish proof of insurance to the Authority prior to commencing performance of the contract.
 
 
 33
 Mapco argued and the district court concluded as a matter of law that the Authority waived the ASP-14 insurance provision requiring the Authority to be named as an additional insured when Canniff phoned Grote and requested that Mapco deliver LP gas to Toll Plaza 56A. We review the district court's entry of summary judgment de novo. Taracorp, Inc. v. NL Industries, Inc., 73 F.3d 738, 743 (7th Cir.1996). We recently reviewed waiver principles under Illinois law in Cole Taylor Bank v. Truck Ins. Exch., 51 F.3d 736 (7th Cir.1995), where we emphasized that waiver "is the intentional relinquishment of a right." Id. at 739. Furthermore, we noted that Illinois law requires that "an alleged waiver either have induced reliance or that it be clearly inferable from the circumstances. Id. (emphasis supplied), citing Lavelle v. Dominick's Finer Foods, Inc., 592 N.E.2d 287, 291-92 (Ill.App.Ct.1992). Lavelle is even more explicit: "Waiver is the voluntary, intentional relinquishment of a known right." 592 N.E.2d at 291. While Lavelle recognizes that waiver can be implied, "an intention to waive must be clearly inferred from the circumstances. Id.[1]
 
 
 34
 Waiver can be written or oral, explicit or implied. Jackson v. Bd. of Review of Dept. of Labor, 475 N.E.2d 872, 878 (Ill.1985). It must, however, be knowing. Id., Lavelle, supra. "Implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." Ryder v. Bank of Hickory Hills, 585 N.E.2d 46, 49 (Ill.1991).[2] The party waiving a contract provision, whether explicitly or implicitly, must thus know about the contract, must know about the provision, and must know that he is waiving the provision. In this case, Canniff knew none of this. At the time of the conversation between Canniff and Grote, not only had Mapco not arranged for the Authority to be named as an additional insured, but Grote was unaware Mapco had even been awarded the contract. Further, despite having signed the bid documents, Grote admitted in deposition that he was not aware that Mapco was required by the contract to obtain insurance naming the Authority as an additional insured. Rather, Grote assumed the Authority had its own insurance, just as he knew Mapco had its own insurance. John Canniff was equally ignorant about the insurance requirements contained within the contract. Canniff, a building maintenance manager, had not read the contract with Mapco but rather had telephoned Diane Fitzgerald in the Authority's Operations Department and asked who had the new LP gas contract. Neither the Maintenance Department nor the Operations Department dealt with contract compliance. Insurance compliance fell within the jurisdiction of the Finance Department. Thus, neither Canniff nor Grote (nor, apparently, Fitzgerald) knew that Mapco was supposed to have the Authority named as an additional insured on its liability policies. Of course, this lack of knowledge also means that neither knew that having failed to first acquire coverage, Mapco would be in breach of the contract if it began performance on the contract.
 
 
 35
 Thus, assuming Canniff had authority to waive the provision for the Authority,[3] because Canniff knew nothing about the provision or whether Mapco had complied with the provision, Canniff could not have implicitly waived the contract requirement when he asked Mapco to deliver LP gas to Plaza 56A.[4]
 
 
 36
 Another reason why Canniff's request for LP gas delivery did not constitute an implicit waiver is because when Mapco district manager Grote spoke with building maintenance manager Canniff, Mapco still had time to comply with the contract's insurance provision. Mapco could have obtained a rider providing the required coverage with a phone call to its insurance company. See Zannini v. Reliance Ins. Co. of Illinois, Inc., 590 N.E.2d 457, 464 (Ill.1992) (insurance binders effective at once); Maxton v. Garegnani, 627 N.E.2d 723, 727 (Ill.App.Ct.1994) (explaining operation of insurance binders). Due to Mapco's filing error, Grote did not know Mapco had the contract. Upon learning so, Grote could have picked up the phone and complied with the contract. When the necessary paperwork arrived, it could have been furnished to the Authority pursuant to the contract. Thus, even had Canniff known that Mapco had not yet complied with all the terms of the contract, his request for an LP gas delivery would not have waived a contract provision with which Mapco still had an opportunity to comply.
 
 
 37
 Nonetheless, the district court found waiver because the Authority permitted the delivery of the LP gas tank before it received the necessary proof of insurance. In support of this proposition, the district court cited General Provision 5.10 which specifies that the "[t]he above described insurance policies or certified copies thereof shall be delivered to Authority prior to commencing work...." Because no evidence had been delivered to the Authority indicating that Mapco had arranged for the Authority to be an additionally named insured, the district court determined the requirement had been waived.
 
 
 38
 The district court read Section 5.10 too broadly. Section 5.10 explicitly states that "[t]he above described insurance policies or certified copies thereof shall be delivered to the Authority prior to commencing work...." (emphasis added). "The above described insurance policies," however, consist solely of business insurance that contractors and suppliers must maintain in order to do business with the Authority. In other words, section 5.10 applies only to insurance for the contractor, not the Authority. Absent from the list is the contract obligation at issue here, which is instead found in another document entirely, the "Additional Special Provisions" document which applies to LP Gas Contract No. 90-47-4738. Paragraph 14 of that document requires that Mapco provide proof of insurance, but does not require that such proof be provided prior to commencing work.
 
 
 39
 These two parts of the contract require different insurance and a different timeframe for providing proof of insurance. Whether or not the Authority intended the timeframe to be different, or whether Mapco understood them to be so (in fact, Grote testified to having no understanding of the insurance provisions at all), is irrelevant. The contract is neither ambiguous, requiring us to delve into what the parties meant, nor does it lead to any absurd results, nor is it contrary to public policy. See, e.g., P.A. Bergner & Co. v. Lloyds Jewelers, Inc., 492 N.E.2d 1288, 1291 (Ill.1986) (if contract not ambiguous, no need to inquire intro intention of parties); First Illinois Bank & Trust v. Galuska, 627 N.E.2d 325, 329 (Ill.App.Ct.1993) (courts must avoid construing contracts that render absurd result); Stryker v. State Farm Mutual Automobile Ins. Co., 386 N.E.2d 36, 38 (Ill.1978) (contract determined by terms insofar as terms not contrary to public policy). In short, there are no circumstances present in this case that justify reinterpretation of the contract. The insurance provisions in General Provisions 5.10 are merely different than those in Additional Special Provision ASP-14. The two different provisions constitute the insurance coverage the Authority invited Mapco to offer, they are what Mapco offered by submitting the bid, and they are what the Authority accepted when it awarded the bid.
 
 
 40
 Nor is this difference in provisions difficult to understand. The insurance coverages listed in General Provisions 5.10 are those required of any business, either by statute (workers compensation and occupational insurance, automobile liability insurance) or by good business practice (comprehensive general liability insurance). In 5.10, the Authority essentially ensures that it deals with financially sound and legally operated businesses. ASP-14 insurance coverage is different. This coverage, contained within a special contract dealing only with LP Gas Contract No. 90-47-4738, requires that the supplier of a hazardous material provide additional liability coverage for the Authority in whose facilities the provider will be placing the hazardous material. This provision deals not with ensuring that the provider is covered, as does 5.10, but with ensuring that the Authority is covered. This insurance is required "during the length of the contract," and proof is required, but the contract does not require the proof prior to beginning work. Testimony from John Hauk, manager of insurance for the Authority, established that the Authority generally allowed several weeks for this proof due to the processing requirements of the paperwork. This is readily understandable considering that the ASP-14 insurance must be obtained in response to the award of the contract while a supplier should already carry the 5.10 insurance. One such proof should be readily available while the other will take some time to process. So, even though Mapco had not delivered to the Authority proof that the Authority was an additional named insured on the requisite liability insurance, as a matter of law the Authority did not, on the undisputed facts of this case, waive the provision.
 
 
 41
 The case before us is factually distinct from the two cases relied upon by the district court for the proposition that a contract provision to obtain insurance is waived if performance is permitted to proceed without proof of insurance. In both Whalen v. K-Mart Corp., 519 N.E.2d 991 (Ill.App.Ct.1988), and Geier v. Hamer Enterprises, Inc., 589 N.E.2d 711 (Ill.App.Ct.1992), the courts of appeals determined that an insurance requirement had been waived where contractors had permitted subcontractors to start, complete, and be paid in full for their work despite the fact that they had never obtained nor furnished proof of the required insurance. In the present case, Mapco had not yet begun performance when the alleged waiver occurred. As discussed above, Mapco still had time to obtain the insurance and, unlike the contracts in Whalen and Geier, proof of the liability insurance at issue was not required prior to beginning work under the contract. Beyond that, unlike subcontract work in building construction where subcontractors work closely with and often under the supervision of the general contractor, Mapco's contract was to provide LP to certain toll plazas under the administration of a large, dispersed, bureaucratic agency. The factual determination of "knowing waiver" is significantly different in the two settings. In the case before us the facts are not in dispute. And the facts do not "sufficiently evidence an intention to waive a right," nor do they reveal "conduct ... inconsistent with any other intention than to waive it." Ryder v. Bank of Hickory Hills, 585 N.E.2d at 49 (quoting Kane v. American National Bank & Trust Co., 316 N.E.2d 177, 182 (Ill.App.Ct.1974)).
 
 
 42
 "[N]ot every dispute over the facts can foil summary judgment; only the ones that might affect the outcome of the suit under the governing law.... Factual disputes that are irrelevant or unnecessary will not be counted.' " Derrico v. Bungee Intern. Mfg. Co., 989 F.2d 247, 250 (7th Cir.1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Although Mapco disputes the content of the phone call between Canniff and Grote, arguing that Canniff demanded immediate delivery (the two parties were ten days into the contract by then so such a request would be something less than remarkable), the differences between the two versions of the conversation are irrelevant. Our analysis hinges on Canniff's uncontested lack of knowledge about the contract provision requiring insurance and whether or not Mapco had complied with the provision. While summary judgment requires that we consider the facts in the light most favorable to the non-moving party, Loewen Group International, Inc. v. Haberichter, 65 F.3d 1417, 1420-21 (7th Cir.1995), no genuine issues of material fact are in dispute here because the contract is clear on its face and the material facts support only one conclusion.
 
 
 43
 Where no genuine issue of material facts exist and where the parties have had a full opportunity to address the issues we have held that it is appropriate to enter summary judgment for the nonmoving party rather than waste judicial resources by remanding the issue for a trial. Morgan Guarantee Trust Company of New York, 466 F.2d 593, 600 (7th Cir.1972). Cf. GCIU Employer Retirement Fund v. Chicago Tribune Co., 66 F.3d 862, 867 (7th Cir.1995) (remanding with instructions to enter summary judgment). This is such a case. The contract's provision requiring that the Authority be named as an additional insured is not in dispute. Nor are the facts concerning Mapco's claim of waiver. Because no genuine issue of material fact remains we remand this case to the district court for entry of summary judgment for the Authority on this issue.
 
 
 44
 Any additional appellate issues merely provide alternative arguments for recovery.[5] Mapco's breach renders Mapco fully responsible for the losses faced by the Authority, which, but for the breach, would have been covered by the contractually-required insurance. Therefore, the only remaining issue is Mapco's appeal of certain damages awarded to Mr. Cusumano.
 
 B. Damage Award
 
 45
 As part of its computation of damages the jury assessed $200,000 for Cusumano's past and future lost earnings and $100,000 for future medical expenses. Mapco seeks a remittitur or new trial on the grounds these two amounts are excessive and were not supported by the evidence. The district court concluded that the verdict was "well supported by the evidence," "was not 'monstrously excessive,' " and was not "a product of passion [or] prejudice," and so denied the request. We review the denial of a motion for remittitur or new trial for abuse of discretion, viewing the evidence in the light most favorable to the verdict. Browning-Ferris Industries v. Kelco Disposal, Inc., 492 U.S. 257, 279 (1989); McNabola v. Chicago Transit Authority, 10 F.3d 501, 516 (7th Cir.1993). We have repeatedly stated that we will not reverse a damage award unless no rational connection exists between the evidence and the award, the award is "monstrously excessive," or is the product of passion and prejudice. McNabola; Gorlikowski v. Tolbert, 52 F.3d 1439, 1446 (7th Cir.1995).
 
 
 46
 The evidence viewed in the light most favorable to Cusumano supports the jury's awards. Cusumano submitted evidence that he had earned $23,879 for the year, up to the date of the accident. As part of his job he also had free personal use of a truck. Cusumano computed the combined value of his salary and the truck at $42,817.31, or roughly $3,600 per month. Cusumano was out of work entirely for 16 months. At $3,600 per month, his lost wages and benefits come to $57,600. The difference between the value of his pre-accident salary, $42,817.31 per year, and his present salary of $29,400.00 per year (with no free truck), is about $13,400 ($13,417.32). At the time of trial, Cusumano had held his present position for two and a half years, yielding a net loss in salary and fringe benefits of 2.5 times $13,400, or $33,500. Adding $57,600 and $33,500 results in $91,100 in lost past wages. Adding to this future lost wages of $201,000 ($13,400 times fifteen years expected future working life) results in a total figure for lost past and future wages of $294,000.
 
 
 47
 In response, Mapco argues that the jury ought to rely only on the yearly wages preceding the year of the accident which, absent Cusumano's overtime pay from the year he was injured, resulted in a considerably lower annual salary. In awarding past and future lost wages in the amount of $200,000, the jury apparently relied more upon Cusumano's evidence, computations, and argument than on Mapco's argument. Given the plausible basis for Cusumano's figures, we cannot say the jury acted unreasonably by so doing and thus we cannot conclude that the district court abused its discretion when it declined to discard the verdict.
 
 
 48
 We are also unwilling to conclude the district court abused its discretion in refusing to order a new trial or remittitur with regard to future medical damages. The jury awarded Cusumano $143,000 for past medical expenses. It then awarded Cusumano $100,000 for "the present value of the reasonable expenses of medical care, treatment, and services reasonably certain to be received in the future." Mapco does not contest the former but vigorously contests the latter.
 
 
 49
 The jury had before it considerable testimony concerning Cusumano's likely future medical and psychological problems. Cusumano introduced medical testimony concerning the extent of his injuries. Cusumano suffered severe burn wounds requiring significant future medical and psychological treatment. One of his burn physicians, Dr. Gamelli, testified that Cusumano would in the future develop accelerated age-related disorders, such as arthritis, and would experience particular problems with his severely burned hands. As for foreseeable future medical treatment, he testified that Cusumano would require follow-up visits as often as every six months. He also testified that burn patients such as Cusumano can suffer from post-traumatic stress disorder for years. Cusumano's psychiatrist, Dr. Kirts, testified that Cusumano in fact suffered from multiple symptom post traumatic stress disorder. He testified that Cusumano's continuing pain contributes to his continuing psychiatric problems. Dr. Kirts testified that Cusumano was on a "high average dose" of the drugs Ativan and Zoloft to counteract chemical imbalances in his brain that exacerbate his condition. Regarding the immediate future, Kirts testified that he sees Cusumano every three months and that Cusumano attends weekly therapy. Finally, in terms of Cusumano's long-term prognosis, Dr. Kirts testified "[i]t is my opinion that he is going to need both medication and the psychotherapy for an extended period of time," and that the symptoms will continue over the rest of his life. The jury also had before it the parties' stipulation that Cusumano's life expectancy was 26.7 years. From the evidence testimony before it, the jury could reasonably infer that Cusumano would require medical and psychiatric treatment for the rest of those 26.7 years. Cusumano submitted to the jury evidence of the cost, to date, of his medical treatment which, combined with their own collective experience, provided a baseline from which the jury could compute future medical expenses. There are certain speculative aspects to computing the future medical costs of accelerated age related disorders where the disorder has not and will not manifest itself for some years. But the jury quite reasonably could have concluded that these future disabilities will require medical treatment and that Cusumano would require assistance in the latter part of his stipulated 26.7 years remaining life expectancy. The $100,000 future medical award breaks down to $3,745.39 per year. We cannot conclude that such an award is "monstrously excessive" or not rationally related to the evidence in this case. The district court did not abuse its discretion when it too reached this conclusion. We therefore affirm the district court's denial of Mapco's motion for a remittitur or a new trial on damages.
 
 III.
 
 50
 We reverse the district court's entry of summary judgment for Mapco on the Authority's cross-claim seeking a declaratory judgment that Mapco had breached its contractual obligation to procure insurance naming the Authority as an additional insured. Because no material facts are in dispute, we remand for entry of summary judgment for the Authority consistent with this opinion. We affirm the district court's denial of Mapco's motion for remittitur or a new trial. AFFIRMED IN PART and REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 Lavelle also provides that "where there is no such intention, the conduct of one party must have misled another into acting on a reasonable belief that a waiver has occurred." Id. at 292. Neither Grote nor Mapco has alleged that Mapco delivered LP gas relying on a misunderstanding that the Authority had waived the requirement. On the contrary, Grote testified he had no knowledge of the contract provision requiring insurance at the time Canniff requested the delivery. Accordingly, we do not consider waiver based on reliance
 
 
 [2]
 This is a factual question. Ryder v. Bank of Hickory Hills, 585 at 49. The district court cites Whalen v. K-Mart Corp., 519 N.E.2d 991, 994 (Ill App.Ct.1988) and Geier v. Hamer Enterprises, Inc., 589 N.E.2d 711, 722 (Ill.App.Ct.1992) for the proposition that waiver is a matter of law. To the extent these two Illinois appellate court decisions stand for this proposition, which we doubt, they are in conflict with the Illinois supreme court, which is conclusive on this issue
 
 
 [3]
 The Authority has not argued that Canniff, a maintenance manager, lacked express, implied, or apparent authority to waive this or any other contract provision for the Authority. An employee of a public agency may generally bind the agency only if he possesses express authority to do so. Illinois law requires that the attorney general examine and approve all Toll Highway contracts. 605 ILCS 10/15. "There can be no implied contract ... without the specified statutory requirements and the approval of the attorney general." Denton Enterprises, Inc. v. Illinois State Toll Highway Authority, 396 N.E.2d 34, 37 (Ill.App.Ct.1979). This rule applies to modifications in contracts as well, id., and would seemingly prohibit implied waivers of contract provisions by maintenance managers. The matter has neither been raised nor argued and we therefore do not consider the question here
 
 
 [4]
 Mapco has not argued, nor does the evidence support any suggestion that the Authority explicitly waived the insurance provision
 
 
 [5]
 The Authority, which is the appellant in this case, has informed us in its brief that resolving this issue as we have renders all other issues raised by the Authority moot. Our review of the briefs and the record confirms this analysis. The Authority also claims resolving this issue would render Mapco's cross-appeal moot. Mapco's cross-appeal seeks to reverse the district court's finding that the settlement between Cusumano and the Authority was entered in good faith, thus discharging the Authority from liability for contribution to Mapco. Because our decision in the Authority's favor on its breach of contract to procure insurance counterclaim will shift responsibility for the entire award to Mapco, Mapco's cross-appeal becomes moot